**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NOTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**JOSHUA HARRIS**                                                                 **PLAINTIFF**

**v.**                                                    **CIVIL ACTION NO. 3:25-CV-279-RPC-RP**

**TRANS UNION LLC**                                                          **DEFENDANT**

MEMORANDUM OPINION

Plaintiff Joshua Harris's [1] Complaint alleges that Defendant, Trans Union LLC ("Trans Union"), violated multiple provisions of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"). Currently before the Court is Trans Union's Motion to Dismiss, which asserts that Plaintiff's Complaint fails to state a viable claim for violations of the FCRA. *See* [Doc. 7].

The Court, having reviewed the party's respective filings, finds that the Motion to Dismiss should be DENIED at this time, and the Plaintiff should be afforded at least one opportunity to amend the Complaint. Should Plaintiff decline the opportunity to amend the Complaint, this action will be dismissed without further notice. If Plaintiff files an amended complaint, Defendant may refile its Motion to Dismiss or another appropriate motion as it sees fit.

*RELEVANT BACKGROUND*

Plaintiff filed his *pro se* [1] Complaint on September 16, 2025, asserting numerous claims against Trans Union for violations of the FCRA.[1] Plaintiff alleges that on August 11, 2025, he submitted a formal written dispute to Trans Union regarding a Midland Mortgage account included in his consumer report. [Doc. 1, ¶ 19(a)].[2] Plaintiff asserts that he included documentation

---

[1] On September 16, 2025, Plaintiff also filed a Motion to Proceed *in forma pauperis* [Doc. 2]. This Court granted that Motion. *See* [Doc. 4].

[2] Plaintiff alleges that he mailed the dispute via certified main to Defendant's primary facility and it was confirmed as delivered on August 18, 2025. [Doc. 1, ¶ 21].

1

verifying his identity contemporaneously with his dispute, including "[a] government-issued identification card; (b) Proof of address; (c) Social Security Card; and (d) a detailed written explanation of the inaccuracies in the disputed account." *Id.* ¶¶ 20(a)-(d).

On August 20, 2025, Trans Union allegedly responded to Plaintiff's dispute letter by "refusing to investigate Plaintiff's dispute," claiming that it "was unable to verify Plaintiff's identity[] despite Plaintiff having provided all necessary identifying information." *Id.* ¶ 22.

Plaintiff alleges that Trans Union's actions violated Sections 1681e and 1681i of the FCRA. Harris asserts five causes of action under the Act: Violation of 15 U.S.C. § 1681i(a)(1)(A) – Failure to Conduct a Reasonable Investigation (Count I); Violation of 15 U.S.C. § 1681i(a)(2) – Failure to Forward Dispute Information to the Furnisher (Count II); Violation of 15 U.S.C. § 1681i(a)(6) – Failure to Provide Written Results of the Investigation (Count III); Violation of 15 U.S.C. § 1681i(c) – Failure to Mark the Account as Disputed (Count IV); and Violation of 15 U.S.C. § 1681(e)(b) – Failure to Maintain Reasonable Procedures (Count V). *Id.* at pg. 8-11.

Trans Union moves to dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing, among other things, that Plaintiff has failed to allege any inaccuracy with the report and the Complaint therefore fails as a matter of law. Plaintiff responds the that he is not required to allege factual inaccuracies to state a viable claim under the FCRA. *See* [Doc. 10]; [Doc. 11].

The Court granted Defendant's [20] Motion to Stay pending the Court's ruling on the Motion to Dismiss. *See* [Doc. 23]. The Court is now prepared to rule.

*LEGAL STANDARD*

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" ***In re Great***

2

*Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

A court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff. *Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 290 (5th Cir. 2016); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. While a complaint does not need detailed factual contentions, the "allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Accordingly, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Turner v. Lieutenant Driver*, 848 F.3d 678, 685 (5th Cir. 2017) (quotation omitted). Additionally, the Court construes all *pro se* filings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007).

*ANALYSIS*

## I.  Fair Credit Reporting Act

Harris's FCRA claims are based on alleged inaccuracies in a credit report provided by Trans Union. Based on these inaccuracies, Harris alleges that he sent a formal written dispute to Trans Union, and Trans Union failed to take necessary corrective action.

> Concerned by "abuses in the credit reporting industry," Congress enacted the FCRA to ensure fair and accurate credit reporting that protects consumers while meeting the demands of commerce. To that end, the Act imposes several obligations on

[credit reporting agencies ("CRAs")][3] and authorizes consumers to bring a private cause of action in response to negligent or willful violations.

*Hammer v. Equifax Info. Servs., L.L.C.*, 974 F.3d 564, 567 (5th Cir. 2020) (quoting *St. Paul Guardian Ins. Co. v. Johnson*, 884 F.2d 881, 883 (5th Cir. 1989); citing 15 U.S.C. § 1681(b)).[4]

Among other things, the Act

require[s] that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, *accuracy*, relevancy, and proper utilization of such information…

15 U.S.C. § 1681(b) (emphasis added); *see also Morris v. Equifax Info. Servs., LLC*, 457 F.3d 460, 465 (5th Cir. 2006).

To achieve these goals, the FCRA regulates consumer reporting agencies that compile and disseminate consumer's personal information. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 418, 141 S. Ct. 2190, 210 L. Ed. 2d 568 (2021); *see* 15 U.S.C. § 1681(f).

Plaintiff's five asserted counts under the Act arise from two provisions of the FCRA: Section 1681(e)(b) and Section 1681(i).

To prevail on his Section 1681(e)(b) claim against Trans Union, Plaintiff must plausibly allege and ultimately prove four elements: (1) Trans Union prepared a consumer report concerning him that contained inaccurate information; (2) the inaccuracy resulted from Trans Union's failure to follow reasonable procedures to assure maximum possible accuracy; (3) Plaintiff suffered a

---

[3] CRAs are defined as "any person (or entity) which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(e).

[4] *See also Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007) (citing 15 U.S.C. § 1681(b)) ("Congress enacted the FCRA in 1970 'to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.'").

4

cognizable injury; and (4) the inclusion of the inaccurate information caused that injury. ***Barron v. Equifax Info. Servs. LLC***, No. 3:16-CV-690-DPJ-FKB, 2019 U.S. Dist. LEXIS 242230, at \*7-8 (S.D. Miss. Sept. 30, 2019) (citation omitted). Plaintiff "bears the ultimate burden" to establish each of these elements. ***Grant v. RentGrow, Inc.***, No. SA-21-CV-1172-JKP, 2023 U.S. Dist. LEXIS 158173, at \*11 (W.D. Tex. Sept. 6, 2023) (citation omitted).

Section 1681i sets forth the procedures a consumer reporting agency like Trans Union must follow when a consumer like Harris disputes the accuracy of information in his credit report file. This provision requires an agency that receives a consumer dispute to conduct a "reinvestigation" of information previously reported—i.e., to reexamine the accuracy of that information in light of the consumer's challenge.

Once a consumer reporting agency receives notice disputing "the completeness or accuracy of any item of information" in a consumer's file, it must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate" and either record the current status of the information or delete the item from the file. ***Ryes v. Equifax Info. Servs., L.L.C.***, 140 F.4th 285 (5th Cir. 2025) (citing 15 U.S.C. § 1681i(a)(1)(A)). The statute requires the reporting agency to promptly notify the "furnisher" of the disputed information (i.e. the bank, debt collectors, etc.) within five business days of receiving the consumer's dispute. 15 U.S.C. § 1681i(a)(2)(A).

If the agency "reasonably determines" that the consumer's dispute is "frivolous or irrelevant," it may terminate the reinvestigation; however, the agency must notify the consumer of its decision to terminate no later than five business days after making such determination. 15 U.S.C. § 1681i(a)(3)(A)-(B). The agency's notice to the consumer must provide its reasoning for terminating the investigation and identify any information required to investigate the disputed information. 15 U.S.C. § 1681i(a)(3)(C)(i)-(ii). In conducting the reinvestigation regarding the

consumer's dispute, the agency must "review and consider all relevant information submitted by the consumer." 15 U.S.C. § 1681i(a)(4).

Lastly, under Section 1681i(a)(6), the reporting agency is required to provide written notice to a consumer of the results of a reinvestigation no later than five business days after it completes such reinvestigation.

## II.     Inaccurate Information

"To establish a claim under Section 1681(e)(b) and Section 1681i of the FCRA, a plaintiff must show that the credit report at issue is inaccurate." *Reyes v. Equifax Info. Servs., LLC*, No. 4:21-CV-639-SDJ, 2024 U.S. Dist. LEXIS 55027, at *3 (E.D. Tex. Mar. 27, 2024), *aff'd sub nom. Reyes*, 140 F.4th at 279.[5] "Other circuits," including the Fifth Circuit, "agree that 'without a showing that the reported information was in fact inaccurate, a claim brought under § 1681i must fail.'" *Reyes*, 140 F.4th at 286 (citing *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008) (collecting cases)).[6] The same holds true for Section 1681e(b) claims regarding inaccuracy of credit reports. *Washington v. CSC Credit Services Inc.*, 199 F.3d 263, 267 n.3 (5th Cir. 2000)

---

[5] *See also **Johnson v. Trans Union, LLC***, No. 3:25-cv-273-X-BN, 2026 U.S. Dist. LEXIS 43186, at *7 (N.D. Tex. Jan 27, 2026) ("Starting with the Section 1681i and Section 1681e(b) claims, to prevail under either, 'a plaintiff must prove that her consumer reports included inaccurate information.'" (citing ***Warner v. Equifax Info. Servs. LLC***, No. 3:23-cv-1286-E, 2025 U.S. Dist. LEXIS 40023, 2025 WL 714243, at *2 (N.D. Tex. Feb. 11, 2025); ***McDonald v. Equifax Inc.***, No. 3:15-cv-3212-B, 2017 U.S. Dist. LEXIS 30815, 2017 WL 879224, at *6 (N.D. Tex. Mar. 6, 2017).

[6] *See, e.g., **Bibbs v. Trans Union LLC***, 43 F.4th 331, 344 (3d Cir. 2022) (holding that "without a showing that the reported information was in fact inaccurate, a claim brought under § 1681i must fail") (quotations omitted); ***Berry v. Experian Info. Sols., Inc.***, 115 F.4th 528, 536 (6th Cir. 2024) (holding that "a showing of inaccuracy is an essential element of a § 1681i claim"); ***Chaitoff v. Experian Info. Sols., Inc.***, 79 F.4th 800, 811 (7th Cir. 2023) ("A [consumer reporting agency]'s liability under both § 1681e(b) and § 1681i(a) depends on inaccurate information—if the credit report is accurate, the consumer has suffered no damages."); ***Carvalho v. Equifax Info. Servs., LLC***, 629 F.3d 876, 890 (9th Cir. 2010) ("Although the FCRA's reinvestigation provision, 15 U.S.C. § 1681i, does not on its face require that an actual inaccuracy exist for a plaintiff to state a claim, many courts, including our own, have imposed such a requirement."); ***Wright v. Experian Info. Sols., Inc.***, 805 F.3d 1232, 1242 (10th Cir. 2015) (holding that proof of "inaccuracy of the report" is essential to prevail on a § 1681i(a) claim); ***Cahlin v. Gen. Motors Acceptance Corp.***, 936 F.2d 1151, 1160 (11th Cir. 1991) (explaining that a § 1681i claim "is properly raised when a particular credit report contains a factual deficiency or error that could have been remedied by uncovering additional facts") (emphasis omitted).

("In order to pursue a cause of action based upon a willful or negligent violation of 15 U.S.C. § 1681(e)(b), the report sought to be attacked must be inaccurate.").[7]

"So, to ultimately establish a violation of either of these FCRA provisions, the consumer must present evidence tending to show that the agency prepared a report containing inaccurate information." *Darnell v. LexisNexis*, No. 3:24-cv-1211-S-BN, 2025 U.S. Dist. LEXIS 258529, at *6 (N.D. Tex. Nov. 7, 2025) (citing *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 944 (11th Cir. 2021)). For the information within a consumer's report to be "inaccurate" within the meaning of the Act, it must either be "patently incorrect" or "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Sepulvado v. CSC Credit Servs. Inc.*, 158 F.3d 890, 895 (5th Cir. 1998); *see also Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir. 1986); *Reyes*, 140 F.4th at 285.

Plaintiff has failed to provide the Court with the inaccurate information or explain how the information contained within his credit report was inaccurate. "[W]hether a report includes inaccurate information requires more at the pleadings stage than a plaintiff making the conclusion without further factual elaboration" that information contained therein is inaccurate. *Johnson v. Trans Union, LLC*, 3:25-cv-273-X-BN, 2026 U.S. Dist. LEXIS 43186, at *8 (N.D. Tex. Jan. 27, 20260) (citing *Rogers v. Equifax Info. Servs. LLC*, 2:23-cv-0537-RPK-TAM, 2024 U.S. Dist. LEXIS 101077 (E.D.N.Y. June 6, 2024) (collecting cases). Courts "routinely dismiss Section

---

[7] "In order to establish a prima facie case under § 1681e(b), a consumer must product evidence of an inaccuracy in her credit report." *Rodriguez v. Trans Union LLC*, Case No. 1:19-cv-379-LY, 2019 U.S. Dist. LEXIS 186016, at *6-7 (W.D. Tex. Oct. 28, 2019) (*citing Toliver v. Experian Info. Sols., Inc.*, 973 F. Supp. 2d 707, 715 (S.D. Tex. 2013)); *see also, e.g., Cahlin*, 936 F.2d at 1156 (stating that "the Act implicitly requires that a consumer must present evidence tending to show that a credit reporting agency prepared a report containing 'inaccurate' information"); *Kuehling v. Trans Union, LLC*, 137 F. App'x 904, 908 (7th Cir. 2005) ("Without evidence of some inaccuracy in the Trans Union report or reinvestigation, Kuehling cannot establish that Trans Union violated . . . § 1681e(b) or § 1681i(a)(1)(A)."); *Washington*, 199 F.3d at 267 n.3 (listing cases holding that inaccuracy is an essential element of a prima facie case under § 1681e(b)); *Walters v. Sentry Link, LLC*, 2018 U.S. Dist. LEXIS 127621, 2018 WL 3603097, at *1 (W.D. Tex. June 18, 2018) (providing that to state a claim under § 1681e(b), "a plaintiff must be able to show that a report contained inaccuracies").

1681(e)(b) and 1681i claims" that fail to describe "the specific misstates" or inaccuracies within credit reports "and explain why they are incorrect." *Id.*

The Court is unable to discern whether the report generated by Trans Union at the center of this litigation contained any actionable inaccuracies because Plaintiff neither provides the report nor identifies the specific entries he contends are incorrect. Plaintiff also fails to explain why those entries are inaccurate within the meaning of the FCRA. Without factual allegations describing the purported error(s), the Court is left to speculate as to the basis of Plaintiff's claim.

"Indeed, a plaintiff does not state a claim based on[]conclusory assertions of inaccuracy. Rather, to state a claim, the plaintiff must set forth facts specifying exactly what errors are reflected in the reports," including "circumstances surrounding the purported errors." ***Damond v. Experian Info. Sols., Inc.***, 2025 WL 2980883, 2025 U.S. Dist. LEXIS 270309, at *29 (E.D. LA Dec. 25, 2025).[8] Plaintiff's Complaint fails to plausibly allege what specific inaccuracies were contained in the credit report generated by Trans Union that would give rise to liability under the FCRA.

For example, Plaintiff alleges that Trans Union "ignor[ed] [his] disputes, fail[ed] to conduct a reasonable investigation, and continu[ed] to report inaccurate information[.]" [Doc. 1, ¶ 7]. This alleged "continued reporting of inaccurate information…negatively impacted Plaintiff's credit score, impairing his ability to obtain credit on favorable terms." *Id.* at ¶ 16(b). Plaintiff further

---

[8] *See **Clark v. Experian***, No. 25-792, 2025 U.S. Dist. LEXIS 93519, 2025 WL 1426080, at *4 (E.D. Pa. May 16, 2025) (noting plaintiff has alleged incorrect spellings and variations of her name, wrong social security numbers and erroneous addresses but not any "facts specifying . . . what those errors were, what consumer credit accounts were involved, or the dates and circumstances surrounding the purported errors" (citing ***Cook v. TransUnion***, No. 23-1146, 2024 U.S. Dist. LEXIS 6104, 2024 WL 128204, at *2 (E.D. Pa. Jan. 11, 2024) (finding plaintiff failed to allege sufficient facts regarding the inaccurate information); ***Cruel v. Experian***, No. 22-5236, 2023 U.S. Dist. LEXIS 107797, 2023 WL 4140828, at *3 (E.D. Pa. June 22, 2023) (finding that plaintiff did not state plausible claim by alleging that information was wrong but without providing facts about her accurate information); ***Peeples v. Equifax Info. Servs. LLC***, No. 23-617, 2023 U.S. Dist. LEXIS 115618, 2023 WL 4374411, at *3 (E.D. Pa. July 6, 2023) (concluding that a claim that credit reports contained inaccurate information with respect to certain stores did not "sufficiently set forth facts describing what inaccurate information [the plaintiff] believe[d] was included . . . nor clearly explained why the information was inaccurate"))).

asserts that he provided Trans Union with "[a] detailed written explanation of the inaccuracies in the disputed account," *Id.* ¶ 20(d), specifically challenging "the accuracy of information reported in relation to the (MIDLAND MORTGAGE – A DIVISION OF MIDFIRST BANK, Account # 5866****)[.]" *Id.* ¶ 35.

But these allegations remain conclusory. "[T]he facts provided by [Harris] do not support a plausible violation of the FCRA where it's alleged only that inaccurate information was reported and that [Harris] was harmed." **Darnell**, 2025 U.S. Dist. LEXIS 259862, at *5. As explained above, a plaintiff must do more than allege an inaccuracy. He must identify the specific information at issue and explain why it is incorrect or misleading. Although Plaintiff repeatedly asserts that he provided Trans Union with a "detailed explanation of the inaccuracies" in his written dispute, he neither attaches the dispute to the Complaint nor provides the Court with those details.[9]

### III.     Leave to Amend Complaint

However, the Court concludes that Plaintiff should be afforded at least one opportunity to amend his Complaint to address the deficiencies explained above due to his *pro se* status.[10]

Because Harris is proceeding *pro se*, his "failure to meet the specific pleading requirements should not automatically or inflexibly result in dismissal of the Complaint with prejudice to re-filing." **Hart v. Bayer Corp.**, 199 F.3d 239, 248 n.6 (5th Cir. 2000). Thus, "[a]lthough a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated

---

[9] The general rule in the Fifth Circuit is that "…a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments." **Dorsey v. Portfolio Equities, Inc.**, 540 F.3d 333, 338 (5th Cir. 2008).

[10] "It is the duty of the trial judge to hold *pro se* complaints to less stringent standards than proper pleadings drafted by lawyers." **Brown v. Hernando Mun. Ct.**, No. 3:24-cv-00359-MPM-RP, 2025 U.S. Dist. LEXIS 218007, at *5 (N.D. Miss. Nov. 5, 2025) (citing **Hepperle v. Johnston**, 544 F.2d 201, 202 (5th Cir. 1976)); *see also* **Taylor v. BooksA Million, Inc.**, 296 F.3d 376, 378 (5th Cir. 2002) ("It is well-established that pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers.") (citations omitted).

opportunities to do so." *Id.* As the Fifth Circuit has explained, "district courts should not dismiss pro se complaints pursuant to Rule 12(b)(6) without first providing the plaintiff an opportunity to amend, unless it is obvious from the record that the plaintiff has pled his best case[.]" ***Ricks v. Khan,*** 135 F.4th 296, 300-01 (5th Cir. 2025).[11]

"In fact, a district court generally errs if it dismissed a pro se complaint…without first giving the plaintiff an opportunity to amend." ***Dark v. Potter***, 293 F. App'x 254, 256 (5th Cir. 2008) (citing ***Bazrowx v. Scott***, 136 F.3d 1053, 1054 (5th Cir. 1998); ***Moawad v. Childs***, 673 F.2d 850, 851-52 (5th Cir. 1982)). Because such dismissals are disfavored, a court should grant a *pro se* party every reasonable opportunity to amend. *See, e.g.,* ***Haines v. Kerner***, 303 U.S. 519, 520-521, 92 S. Ct. 594, 30 L. Ed. 2d. 625 (1972) (reversing 12(b)(6) dismissal of complaint where it did not appear beyond doubt that the plaintiff could prove no set of facts that would entitle him to relief).

In this case, Harris has not been afforded an opportunity to amend his Complaint. The Court finds it appropriate to provide him at least one opportunity to do so, as he has alleged some facts that could potentially give rise to relief. "The Court cannot ignore the importance that precedent has placed on affording a plaintiff, and particularly a *pro se* plaintiff who has made no prior amendments to the complaint, the opportunity to amend before dismissal." ***Robinson v. McComb***, No. 5:24-cv-00063-DCB-LGI, 2026 U.S. Dist. LEXIS 48858, at *5 (S.D. Miss. Mar. 10, 2026).

Harris is directed to file an amended complaint that articulates: (1) the perceived inaccuracies in the report; (2) why those inaccuracies entitle him to relief; (3) and the factual

---

[11] *See* ***Hale v. King***, 642 F.3d 492, 503 (5th Cir. 2011) (per curiam) (first citing ***Bazrowx v. Scott***, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam); and then citing ***Pena v. United States***, 157 F.3d 984, 987 n.3 (5th Cir. 1998)) (remanding to give the defendant the opportunity to amend his allegations); *see also* ***Bazrowx***, 136 F.3d at 1054 ("Generally a district court errs in dismissing a pro se complaint for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend." (italics omitted) (citing ***Moawad v. Childs***, 673 F.2d 850, 851-52 (5th Cir. 1982))); ***McMillan v. Richmond***, 400 F. App'x 878, 881 (5th Cir. 2010) (per curiam) ("[A] pro se complaint should not be dismissed without providing the plaintiff an opportunity to amend, unless it is obvious that the plaintiff has pled his best case

support corresponding to each element of his Section 1681e and 1681i claims. Plaintiff must comply with the applicable pleading standards set forth herein.

*CONCLUSION*

Trans Union's Motion to Dismiss [Doc. 7] is therefore **DENIED** *without prejudice.* Trans Union may re-urge such a motion if Plaintiff files an amended complaint.

For the reasons stated above, Harris shall file an amended complaint within twenty-one (21) days of the entry of this Order. Should Harris fail to file an amended complaint on or before May 20, 2026, the Court will dismiss this case *without further notice* and enter a Rule 58 final judgment.

SO ORDERED, this the 29th day of April, 2026.

_____
UNITED STATES DISTRICT JUDGE

11